Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Defendant Noel de Guzman Segui, and I would like to reserve a few minutes of my time for rebuttal. Please watch the clock. I will. Thank you, Your Honor. Mr. Segui claims that his sentence should be reversed because the government breached the plea agreement regarding the amount of loss. In this case, the parties stipulated in the plea agreement to the amount of loss. Mr. Segui contends that the government breached the plea agreement when the case agent verified to the probation officer that Citigroup's claimed loss of almost $50,000 was loss caused by the defendants in this case. The basis of Mr. Segui's claim is that the case agent was not simply neutrally providing information in response to an inquiry from the probation officer. The government's comments make it clear that, in fact, what the case agent was providing was the government's work product. The prosecutor stated her belief as to that the amount of loss was not readily provable as directly attributable to the offense. The government further commented that it did not believe that it had direct evidence supporting the loss attributable to the receipts, and that it did not believe that it had sufficient direct evidence that all loss reported by the victims was attributable to Mr. Segui's criminal scheme. The prosecutor also agreed that the amounts in the plea agreement were the only amounts for which there was direct evidence that Mr. Segui's offense contributed to the amount. Again, the prosecutor said we do not believe we have sufficient direct evidence. Excuse me. Can I ask a question about this $49,000, the Citibank loss? One question I had in reviewing the materials was it didn't – the district court did not appear to use the $49,000 in its sentencing calculations. So even if the case agent had verified this amount, wouldn't that be a harmless error? Well, Your Honor, I think that that is part of the loss that was – the amount of loss that got up to the $70,000. Well, the district court expressly said, I'm not going to consider the $49,000. I didn't do it for the other defendants. I'm going to sentence this person consistently in the above $30,000 range. And so he seems to discount the $49,000 entirely. Well, I think, Your Honor, the court did consider it to some extent. In restitution, the court did award $62,000, which is the $49,000 Citibank loss plus the $13,000 loss that some of the other victims were claiming. But the plea agreement didn't cover the restitution, right? Because the – Mr. Segee appealed the amount of restitution, and that wasn't covered by the plea agreement. Well, it was an amount of loss that I think was encompassed by the government's agreement with respect to the amount of loss. And the district court did take it into consideration in restitution, and it's unclear whether the district court took it into consideration with respect to the intended loss, because the intended loss went from the $30,000 to the $70,000. I think the – I think Judge Ikuda's question is a million-dollar question there, because that was one which I was going to ask you. But it seems to me that your argument is that if even the government, in providing information to the probation officer who's preparing the report, then an agreement is breached. But I couldn't find any authority for this. It seemed to me that the government followed their plea agreement to the letter in front of the judge. The government argued what they needed to do. They were frank with the judge. They said what they had to say. If there has been any breach whatsoever, it is only info which their office gave to the probation officer in trying to determine it. That's the best you can say as to the breach. And yet I found no authority for that being a breach of their agreement when they carried out the agreement in every appropriate way in front of the judge, even given the information in the probation report. I mean, the government never said one thing about going with this extra amount. And, in fact, as Judge Ikuda said, I think the government's arguments even made the judge such that the judge did not consider that even in the sentence. Well, I think Mr. Siege argues two points. One is that the case agent should not have provided that information to the probation officer. And we're arguing that it was not communicating a neutral fact, that it was, in fact, basically the government's work product. It was the government's opinion and belief and judgment rather than a neutral fact. But with respect to Your Honor's other position regarding the government's position during sentencing, in its sentencing papers and in its sentencing presentation to the district court, the government repeatedly said, that's what we believed at the time the plea agreement was negotiated. And the government, by doing so, was suggesting to the district court, we no longer hold that belief. And in doing so, the government was, therefore, depriving the defendant of his right to a united front. It was depriving the defendant also of his right to the added persuasiveness of the government's support that the cases say that the defendant is entitled to. Well, however, when one comes in front of the district court to argue at sentencing, it's often the case that the government now knows more facts based on the probation report or the pre-sentence report that they knew at the time of the sentencing or they knew at the time of the plea agreement, and they're often in a situation where knowing more facts they may have done something differently, but they always argue, that's what we knew then and, therefore, we're sticking by it. And that's what they did. If you read what they said, there was never one time where they departed from what they suggested they would do under the agreement, even though there were other facts that they may have known or may not have known. I mean, that's the normal thing you get as a judge, and you're, of course, questioning, trying to do what you can to see why, in fact, they are where they are when now you have all this information in front of you, why, in fact, they would ever keep going with the same thing they're going, and here the government, as per the agreement, said, doesn't matter. At that time, we thought this, and we're arguing this, and, therefore, stayed with the agreement that they said they would enter into. That's the way I read it, and I guess I wasn't there. I'm only reading stuff on the record. But having taken a lot of these pleas and then having sentenced and having in front of you then a probation report, which is the pre-sentence investigation report, which has totally different stuff than you necessarily see in the agreement, seemed to me the government said it doesn't matter what we knew or didn't know. We're arguing this regardless of the situation, which is what they're supposed to do. Now, if they had somehow cast aspersions on this and say, well, you know, or make a big gigantic effort in their argument to make it different than it was, that might be something I might look at. But if they say the same thing they've always said, even though they had different facts in front of them at the time of the plea agreement, that doesn't seem to break what they were supposed to do, and, in fact, they do it all the time in the sentencing. Well, I think, Your Honor, in fact, in this case they did in a sense cast aspersions, as Your Honor was saying, because what they said was that's what we believe now. They're telling a judge that's what we believed then. They're telling a judge that's not what we believe now. And, Your Honor, I also referred to the government responding to the judge's comments, but that's not what happened here. I understand. In this case, all the judge said was would the government like to be heard, and the government volunteered. You know, we believed at the time of the plea agreement one thing. We believe differently now. And, therefore, they were depriving the defendant of its right to a united front. And what is my standard of review as to this? The standard of review we're arguing is de novo review. Yes. Or a clear error. Which? Well, I think that this is the case where the courts are unclear on the standard of review, and if I've got this correct. And you're arguing for de novo. Yes. All right. Well, I think there is. Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honor. It's Anne Boyce for the government. If I could, I'd like to address some of the questions raised by the panel with appellants' counsel. With respect to whether the court considered the $49,000 in loss reported by Citigroup and then subsequently verified by the case agent, we think looking at both the court's tentative sentencing memorandum, which it issued before the sentencing hearing, and then its statement at ER 123 that it was planning on sentencing in accord with that memorandum, it's clear that it did not take into account the $49,000. With respect to what the case agent actually did, we think that the argument that he was not simply neutrally providing information simply has no support in the record. What the record says in the PSR is that he verified the statement. The case agent was not a lawyer. There's no suggestion that he was making a legal argument that this should go to amount of loss. He was simply verifying that the loss had occurred and that it was something that certainly was relevant to restitution, which was an amount that was left open. With respect to the argument that the government may have somehow breached the plea agreement by its statements at the sentencing hearing, trying to explain both what it had believed at the time of the negotiation of the plea agreement and what it believed currently, again, we'd simply point to the fact that the district court found that the AUSA had not backed away from the agreement. The district court who was there listening to the arguments, who'd heard the sentencing papers, in fact thought that the AUSA was vigorously arguing that the plea agreement should be followed. And we'd point to two cases that we think are instructive on this point. First, Maldonado, a case out of this court, where, in fact, the U.S. attorney acknowledged that the plea agreement contained a calculation error, that it was simply wrong, but nonetheless argued that the court should follow it because that was what the plea agreement stipulated, and this court found that there was no breach in that case. Whereas here, the AUSA attempted to actually present reasons why the court should follow that stipulation, not simply because the parties had stipulated to it, but because it was appropriate. We think there clearly could be no breach. I'd also point this court to U.S. v. Quok, also out of this circuit, where the court found that where comments are ambiguous by the government counsel, that that certainly can't be a case where the AUSA is trying to signal somehow or the government is trying to signal to the court not to follow the plea agreement. Does the defendant bear the burden of proving a breach? We know that the government bears the burden when the breach is on the part of the defendant. I believe that the defendant does bear the burden. But what's the best case for that? I apologize, Your Honor. I don't have a case at my fingertips. I'd be happy to look that up and submit it to the court through a 28J letter, if that would be appropriate. Okay. I think we have your briefing on it. Okay. Thank you. If there are no further questions, I would be happy to submit on the briefing. Well, I guess I want to understand on the restitution. What's the standard of review? Your Honor, I believe there's some ambiguity as to whether the defendant actually objected to it. He certainly did not object to the amount of restitution in his papers. And there's the somewhat cryptic statement made at the sentencing hearing where counsel said, even though I think that the government is correct in essence in saying that we didn't dispute the restitution amount, my argument in terms of the breach and in terms of the fact that the loss is what it is, I'd stand by the argument that it also applies to the restitution. The government's position is that because it's not a clear challenge to the amount of restitution, that they waived that. If, however, they did not waive it, then we think it's reviewed for abuse of discretion. First, for plain error, if you conclude that they did not sufficiently object. If you conclude that they did sufficiently raise the issue, then for abuse of discretion. And we think whereas here there's no challenge to the fact that the victims reported these amounts, we think that the amount of restitution was appropriate. Well, one last question. The Rule 32 issue. The defendant raised a number of objections to drug testing and drug treatment and various other recommendations that the probation officer had made in the presentence report. And the district court did not resolve those disputes. Was that a Rule 32 violation? Your Honor, we don't think that they were, because the specific objections that are raised on appeal are four. First, there are three supervised release conditions, one to the number of drug tests, one to the imposition of sweat patch testing, and one requiring the defendant to pay for the court-ordered drug treatment. The fourth objection was simply a categorical objection to paragraphs 8 through 15 of the PSR as containing facts that weren't known to the defendant. So beginning with that issue, we think that that simply didn't put the matter into play, and it requires that an objection actually controvert the facts. Here the defendant never argued that those facts were inaccurate or that they were wrong in some way. It simply said that he didn't know them, but there's no requirement that the defendant have personal knowledge of those facts for them to nonetheless be true. The rule says the controverted matter. It doesn't specifically say the controverted facts. And he was controverting the recommendation, I guess. I think with respect to those three, with respect to the supervised release conditions, I think if you look at the actual objections that were raised in the district court papers, they weren't objections, again, to the underlying evidentiary facts, which is typically where this Court has required more express findings than simply a ruling nonetheless of imposing the conditions. What they said was, and they didn't, for example, with the payment for court-ordered drug treatment, say that the PSR got the facts about the defendant's financial condition wrong, simply argued that based on those facts, he wasn't able to pay. There's a conclusion that could be made or not, and I think the Court implicitly resolved it by imposing those conditions. Similarly, with the sweat patch testing, what the papers below did was simply cite a district court case that had found it unreliable. Again, it wasn't a challenge to any of the facts in the PSR, but we think it was sufficient for the Court to impose the condition nonetheless. And similarly, with the amount of drug tests, they weren't challenging his history of drug use. They were simply challenging the appropriateness of the number based on facts that weren't disputed. So again, we think in that case, it was appropriate simply to resolve it by imposing the condition. If there are no further questions, the Governor will be happy to see you. Thank you very much. Thank you. Very briefly, Your Honors, I just wanted to respond to a few of the prosecutor's comments. She stated that the case agent was not a lawyer and therefore should, I guess, be held to a different standard. But in fact, the case agent was representing the government's position. And the reason that we relied upon so many of the prosecutor's comments was to show that this was not simply a factual matter, and it was not simply a response to a factual question. It was a matter of legal judgment and analysis and opinion. The prosecutor also referred to the Maldonado case, and that is distinguishable in several respects. In one respect, the Maldonado case held that by honestly providing correct calculations and responding to the district court's direct questions, the government did not breach the plea agreement, which is what Maldonado said. Again, here we do not have a situation where the prosecutor responded to direct questions. She volunteered the information that we're claiming was a breach of the plea agreement. Additionally, in Maldonado, the plea agreement provided that the government agreed to recommend a base offense level and no supervisory role enhancement, whereas in this case the government agreed that a certain level of – agreed to a certain amount of loss. And that, in the Anderson case, is held to be a different situation than where the government makes a more general promise in the plea agreement. And with respect to the Rule 32 matters that Your Honor mentioned, I agree that, in fact, it's not limited to facts but to matters in dispute. And Mr. Segee raised several matters in dispute which the district court did not rule on. The prosecutor argued that the district court was not required to rule on it. It could rule on it sub silentio just by ignoring them. But as we cited in our reply, that is not sufficient. The district court has to rule on these matters under Rule 34. And with that, thank you very much. This case is submitted.
judges: Nelson, Ikuta, Smith